## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

EDITH M. BLIZMAN, as Executrix of the
Estate of Joseph Blizman,

                  Plaintiff,

      v.

TRAVELERS PERSONAL INSURANCE
COMPANY,

                  Defendant.

CIVIL ACTION NO. 3:19-CV-01539

(MEHALCHICK, M.J.)

## MEMORANDUM OPINION

Presently before the Court is a Motion to Dismiss (Doc. 23) brought by Defendant in the instant insurance-coverage case. In June 2019, Joseph Blizman ("Decedent") tragically suffered fatal injuries when he was hit by a car while riding his scooter. (Doc. 16, at 3). His wife and Executrix of his estate, Edith M. Blizman ("Plaintiff"), seeks a declaration that The Travelers Home and Marine Insurance Company's ("Defendant")[1] insurance policy covers the Decedent's injuries arising from the collision involving his scooter. (Doc. 16, at 38).

Defendant moves to dismiss Plaintiff's claim based on an exclusion (the "household vehicle exclusion") contained in Defendant's insurance policy and because the Blizmans allegedly waived coverage. (Doc. 23). The parties have fully briefed the issues, presented oral argument to the Court, and submitted supplemental authority. (Doc. 24; Doc. 31; Doc. 32; Doc. 35; Doc. 36; Doc. 37; Doc. 38; Doc. 39). Therefore, Defendant's motion is ripe for

---

[1] Defendant identifies itself as The Travelers Home and Marine Insurance Company, not, as pleaded in the Complaint, Travelers Personal Insurance Company a/k/a The Travelers Indemnity Company a/k/a Travelers Property Casualty Companies. (*See* Doc. 23, at 1).

disposition.

For the following reasons, Defendant's motion to dismiss (Doc. 23) is **DENIED**.

## I.    PROCEDURAL HISTORY AND BACKGROUND

This matter comes before the Court upon Defendant's removal from state court to federal court on September 5, 2019. (Doc. 1). After removal, Plaintiff filed an Amended Complaint on February 21, 2020, which stands as the operative complaint in the matter. (Doc. 16). The parties subsequently consented to the undersigned's jurisdiction pursuant to 28 U.S.C. § 636(c)(1). (Doc. 17, at 9; Doc. 18).

The Amended Complaint asserts that Defendant's insurance policy (the "Policy") originated in March 2008, when the Blizmans obtained car insurance from Defendant for three vehicles. (Doc. 16, at 2-3). Though the Blizmans purchased UIM coverage, Defendants at that time obtained a Rejection of Stacked Limits for UIM coverage on the three vehicles.[2] (Doc. 16, at 2-3). This waiver rejected "stacked limits of [UIM] coverage under the policy for myself and members of my household" ("Stacking Waiver"). (Doc. 23-2, at 2; Doc. 16, at 2).[3] The Policy also allegedly included a Household Vehicle Exclusion ("HVE") exempting the following from the Blizmans' UIM coverage: bodily injury sustained "by any person . . .

---

[2] UIM coverage protects the policy-holder from third-party underinsured motorists, and "is triggered when a third-party tortfeasor injures or damages an insured and the tortfeasor lacks sufficient insurance coverage to compensate the insured in full. 'Stacking' refers to the practice of combining the insurance coverage of individual vehicles to increase the amount of total coverage available to an insured." *Gallagher v. Geico Indemnity Company*, 201 A.3d 132 n. 1 (Pa. 2019).

[3] Courts "may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

[w]hile 'occupying,' or when struck by, any motor vehicle owned by you or any 'family member' which is not insured for this coverage under this policy . . . ." (Doc. 16, at 4). [4]

In January 2009, the Policy was amended to add a fourth vehicle. (Doc. 16, at 2-3). Defendant did not ask Decedent to sign another stacking waiver or otherwise provide him with a new opportunity to reject stacked coverage. (Doc. 16, at 3; Doc. 23-2, at 2). Plaintiff asserts that because Defendant "failed to obtain [a new] rejection form . . . , under current Pennsylvania law, [the Policy] [provided for] stacked UIM coverage…" (Doc. 16, at 3). In June 2019, at the time of the collision, Plaintiff and Plaintiff's decedent were insured for two automobiles under the Policy. (Doc. 16, at 2; Doc. 1-1, at 15). [5]

The collision resulting in Decedent's fatal injuries involved his scooter – insured by Progressive Insurance for UIM coverage up to $25,000 – and the tortfeasor's vehicle – insured by GEICO for bodily injury up to $25,000. (Doc. 9-1, at 5). On June 9, 2019, Decedent was at a stop sign atop his scooter heading northbound on Airport Road in Luzerne County. (Doc. 16, at 3). Traveling in the same direction was Salvatore Acculto, driving a vehicle owned by Rita Marie Tracy. (Doc. 16, at 3). Acculto struck Decedent, knocking him to the ground. (Doc. 16, at 3). Though Decedent survived the initial impact, his injuries proved to be fatal.

---

[4] Plaintiff asserts that this exemption was in effect at the time of the accident; however the exhibit which she cites is the Auto Policy insuring agreement for policy period beginning February 1, 2006, and ending February 1, 2007, before the alleged Policy inception date or the date the accident allegedly occurred. (Doc. 16, at 2-4; Doc. 1-1, at 44, 53).

[5] Both parties refer to the exhibits attached to the original complaint (Doc. 1-1), therefore in the interest of efficiency the Court will bypass Local Rule 15.1 (which requires an amended complaint to stand on its own including exhibits) and consider these exhibits. *See DeFebo v. Andersen Windows, Inc.*, 2009 WL 3150390, at *1 n. 1 (E.D. Pa. 2009) (allowing for this to occur).

(Doc. 16, at 3).

As a result of this accident, Plaintiff pursued UIM benefits under the Policy. (Doc. 16, at 5). At the time of the accident, the Blizmans were the only insureds listed in the Policy, which provided for $100,000 in unstacked UIM coverage for each of the Blizmans' two covered vehicles. (Doc. 16, at 2; Doc. 1-1, at 16). Despite the Policy's HVE,[6] Plaintiff's attorney demanded that Defendant tender payment under the Policy, arguing that under *Gallagher v. Geico Indemnity Company*, 201 A.3d 131, 132, 138 (Pa. 2019), the Policy's HVE is unenforceable. (Doc. 16, at 4-5). In her amended complaint, Plaintiff draws support from *Donovan v. State Farm Mut. Auto. Ins. Co.*, No. CV 17-03940, 2019 WL 2715635 (E.D. Pa. June 28, 2019), wherein the district court opined, "The broad language of the Supreme Court in *Gallagher* favors a conclusion that such [waiver] provisions are *per se* unenforceable." (Doc. 16, at 5) (quoting *Donovan*, 2019 WL 2715635, at *1). Defendant did not acknowledge or respond to counsel's demand, and this suit ensued. (Doc. 16, at 5).

Plaintiff seeks relief in the form of a declaration that the Policy provides stacked UIM coverage for the fatal injury suffered by Decedent following the June 9, 2019, scooter accident. (Doc. 16, at 6). Although not expressly stated in the Amended Complaint, Plaintiff invokes the Court's diversity jurisdiction under 28 U.S.C. 1332(a) and seeks relief pursuant to the Declaratory Relief Act, 28 U.S.C. § 2201.[7]

---

[6] As discussed *supra*, the Policy's HVE allegedly exempted from the Blizmans' UIM coverage: bodily injury sustained "by any person . . . [w]hile 'occupying,' or when struck by, any motor vehicle owned by you or any 'family member' which is not insured for this coverage under this policy . . . ." (Doc. 16, at 4).

[7] In her Amended Complaint, Plaintiff does not expressly assert the basis of the Court's jurisdiction, nor does she reference 28 U.S.C. § 2201, but her allegations and the nature of this case make clear that she invokes diversity jurisdiction and seeks declaratory relief under

## II.   DISCUSSION

Defendant moves to dismiss this claim because the scooter Decedent was driving at the time of the accident was not insured for UIM coverage under the Policy (but rather through a different insurer) and the claim for UIM benefits is therefore barred by the HVE. (Doc. 24, at 15-16). Defendant also argues that the Stacking Waiver signed by the Decedent bars Plaintiff from stacked UIM benefits. (Doc. 24, at 16). Plaintiff submits that the HVE is *per se* invalid under *Gallagher* and that the Stacking Waiver was valid only until the Blizmans added a fourth vehicle to the Policy, at which time Defendant was required to obtain a new stacking waiver. (Doc. 31, at 12-13, 19). Regarding *Gallagher*, Defendant contends that the Pennsylvania Supreme Court did not go so far as to *per se* invalidate all HVEs under all circumstances and that it should be enforced in this case.

### A.   PROCEDURAL AND SUBSTANTIVE LEGAL STANDARDS

Because this case is before the Court on a state law breach-of-contract claim based on diversity jurisdiction, the Court is guided by certain principles. When interpreting state law, the Court must "follow a state's highest court," and "if that state's highest court has not provided guidance, [the Court is] charged with predicting how that court would resolve the issue." *Illinois Nat. Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 231 (3d Cir. 2011). The Third Circuit has instructed:

> To do so, we must take into consideration: (1) what that court has said in related areas; (2) the decisional law of the state intermediate courts; (3) federal cases interpreting state law; and (4) decisions from other jurisdictions that have discussed the issue. Although lower state court decisions are not controlling on an issue on which the highest court of the state has not spoken, federal courts

the Declaratory Relief Act. *See, e.g.*, Kuhns v. Travelers Home & Marine Ins. Co., 283 F. Supp. 3d 268 (M.D. Pa. 2017), *aff'd*, 760 F. App'x 129 (3d Cir. 2019); Donovan, 392 F. Supp. 3d at 552. Defendant does not argue that this aspect of the Amended Complaint is deficient.

must attribute significant weight to these decisions in the absence of any indication that the highest state court would rule otherwise.

*Illinois Nat. Ins. Co.*, 653 F.3d at 231 (internal citations and quotation marks omitted).

When "the Pennsylvania Supreme Court has spoken, we are to accept its pronouncement 'as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted.'" *Kuhns v. Travelers Home and Marine Insurance Co.*, 283 F. Supp. 3d 268, 273 (M.D.Pa. 2017) (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940)).

### 1.  Motions to Dismiss under Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Although a court must accept the fact allegations in a complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*,

556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In evaluating a motion to dismiss, a court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

### 2.   The Pennsylvania Motor Vehicle Financial Responsibility Law

With the enactment of the Motor Vehicle Financial Responsibility Law (MVFRL)[8] in 1984, the "Pennsylvania legislature added UIM coverage and made it mandatory, along with [uninsured motorists (UM) coverage]." *McKnight v. State Farm Ins. Co.*, No. CIV.A. 06-0105, 2007 WL 2702660, at *3 (W.D. Pa. Sept. 13, 2007) (citing Historical and Statutory Notes to 75 Pa. Cons. Stat. Ann. § 1731 (Act 1990-6 Legislation)); *Lewis v. Erie Ins. Exch.*, 568 Pa. 105, 150-151 (2002)). "UIM coverage serves to promote the recovery of damages for innocent victims of accidents with uninsured or underinsured drivers." *Lewis v. Erie Ins. Exch.*, 568 Pa. 105, 120 (2002). The MVFRL was amended in 1990 to make UM/UIM coverage optional with the requirement that insurers provide insureds an opportunity to opt for such coverage. *McKnight*, 2007 WL 2702660, at *4. Thus, § 1731 provides, in relevant part:

> **(a) Mandatory offering.--**No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless [UM/UIM] coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of [UM/UIM] coverages is optional.

---

[8] 75 Pa. Stat. and Cons. Stat. Ann. §§ 1701-1799.7.

\*       \*       \*

> **(c) Underinsured motorist coverage.--**Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles. The named insured shall be informed that he may reject underinsured motorist coverage by signing [a] . . . written rejection form[.]

75 Pa. Stat. and Cons. Stat. Ann. § 1731(a), (c).

The statute defines "[u]nderinsured motor vehicle" to mean a "motor vehicle for which the limits of available liability insurance and self-insurance are insufficient to pay losses and damages." 75 Pa. Stat. and Cons. Stat. Ann. § 1702.

A corollary to the UM/UIM-related provisions is § 1738, which pertains to "[s]tacking of [UM/UIM] benefits and option to waive." This section of the MVFRL provides as follows:

> **(a) Limit for each vehicle.--**When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. *The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.*

> **(b) Waiver.--**Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

> **(c) More than one vehicle.--**Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

75 Pa. Stat. and Cons. Stat. Ann. § 1738(a)-(c) (emphasis added).

Together, § 1731 and § 1738 mandate that stacked UM/UIM coverage is the default level of coverage but that an insured can waive such coverage in writing pursuant to the

MVFRL. *See* 75 Pa. Stat. and Cons. Stat. Ann. § 1731(c.1) ("If the insurer fails to produce a valid rejection form, [UIM] coverage . . . under that policy shall be equal to the bodily injury liability limits."); *Sackett v. Nationwide Mut. Ins. Co.,* 919 A.2d 194, 202 (Pa. 2007) (*Sackett I*) ("[T]he provision of stacked UM/UIM coverage is the default coverage limit established by the General Assembly."), *modified on reargument*, 940 A.2d 329 (Pa. 2007) (*Sackett II*).

Underlying the MVFRL are two competing interests. On the one hand, the "MVFRL is to be construed liberally in order to promote justice and to give effect to its objects, one of which is affording the injured insured the greatest possible coverage." *McKnight*, No. 06-CV-0105, 2007 WL 2702660, at *4 (W.D. Pa. Sept. 13, 2007). On the other hand, the "legislative concern for the increasing cost of insurance is the public policy that is to be advanced by statutory interpretation of the MVFRL." *Paylor v. Hartford Ins. Co.*, 536 Pa. 583, 587 (1994). The Superior Court has opined, "In close or doubtful cases, . . . the intent of the legislature and the language of insurance policies must be construed in favor of coverage for the insured." *McKnight*, 2007 WL 2702660, at *4 (citing *Motorists Ins. Companies v. Emig*, 664 A.2d 559, 566 (Pa. 1995).

B. <u>Analysis</u>

In its Motion to Dismiss, Defendant argues that the Policy's HVE and Decedent's Stacking Waiver bar Plaintiff from obtaining stacked UIM benefits under the Policy as a matter of law. If the HVE were enforceable, it would preclude coverage because Plaintiff asserts that at the time of the accident Decedent was occupying a motor vehicle that he owned "which [wa]s not insured for [UIM] under" the Policy. (Doc. 16, at 3). The plain terms of the exclusion would bar Plaintiff's claim for UIM benefits. Likewise, if the Stacking Waiver were valid at the time of the accident, Plaintiff would have no claim to relief.

Plaintiff's counter is two-fold. She argues that (1) HVEs are *per se* unenforceable under *Gallagher*; and (2) the Stacking Waiver was valid only until the Blizmans added a fourth vehicle to the Policy in 2009, at which time stacking became the default coverage because Defendant failed to obtain a new waiver. The Court addresses each of these arguments below.

### 1.   The Household Vehicle Exclusion after *Gallagher v. GEICO*

In *Gallagher*, the Pennsylvania Supreme Court had occasion to address the enforceability of an insurance policy's HVE. *Gallagher*, 201 A.3d at 138. If the HVE, which Plaintiff alleges was present in the Policy, is enforceable and applicable, coverage is precluded due to its language barring UIM coverage for any person occupying any motor vehicle not insured for coverage under the Policy.[9] (Doc. 16, at 4).

In *Gallagher*, the plaintiff ("Gallagher") was operating his motorcycle when the driver of a pickup truck failed to obey a stop sign and collided with Gallagher, causing him severe injuries. *Gallagher*, 201 A.3d at 132. Gallagher had two insurance policies from GEICO: one for his motorcycle which included $50,000 of stacked UIM coverage, and one for his two automobiles which included $100,000 of stacked UIM coverage. *Gallagher*, 201 A.3d at 132-133. Gallagher settled his claim against the tortfeasor, but the coverage was insufficient. *Gallagher*, 201 A.3d at 133. He then filed claims with GEICO seeking stacked UIM benefits under both his policies. *Gallagher*, 201 A.3d at 133. GEICO tendered the $50,000 in UIM benefits provided under Gallagher's motorcycle policy but denied Gallagher's claim for UIM benefits under the automobile policy based on an HVE clause. *Gallagher*, 201 A.3d at 133. Gallagher filed suit, and GEICO moved for summary judgment. *Gallagher*, 201 A.3d at 133.

---

[9] The Amended Complaint states that Decedent was occupying a scooter insured by Progressive Insurance Company at the time of the accident. (Doc. 16, at 3).

The trial court granted summary judgment, and the Pennsylvania Superior Court affirmed based, in part, on *Erie Insurance Exchange v. Baker*, 601 Pa. 355 (Pa. 2009). *Gallagher*, 201 A.3d at 133.

Reversing the trial court's order granting summary judgment, the Pennsylvania Supreme Court held that an HVE cannot be used as a *de facto* waiver of stacked UIM coverage when the insured does not formally waive stacking through the statutorily-prescribed UIM coverage waiver. *Gallagher*, 201 A.3d at 138. It was undisputed that Gallagher did not sign a stacking waiver. *Gallagher*, 201 A.3d at 138. Therefore, the automobile policy's HVE could not be used to prevent payout of its UIM benefits despite the fact that Gallagher was occupying his motorcycle – which was insured under a different policy – at the time of the collision. *Gallagher*, 201 A.3d at 138. In ruling for Gallagher, the court stated that GEICO's attempt to deprive Gallagher of the stacked coverage that he had purchased

> violates the clear mandates of the waiver provisions of Section 1738. Indeed, contrary to Section 1738's explicit requirement that an insurer must receive an insured's written acknowledgement that he knowingly decided to waive UM/UIM coverage, the [HVE] strips an insured of default UM/UIM coverage without requiring an insurer to demonstrate, at a bare minimum, that the insured was even aware that the exclusion was part of the insurance policy. This practice runs contrary to the MVFRL and renders the [HVE] invalid and unenforceable. In fact, this case is a prime example of why [HVEs] should not and cannot operate as a pretext to avoid stacking.

*Gallagher*, 201 A.3d at 138 (internal citation omitted).

At the end of its decision, the court held "that the household vehicle exclusion violates the MVFRL; therefore, these exclusions are unenforceable as a matter of law." *Gallagher*, 201 A.3d at 138. As such, when a UM/UIM stacking waiver has not been signed, an HVE cannot be utilized by the insurer to avoid stacking.

Defendant argues that the holding in *Gallagher* is inapplicable to this case for several

reasons: (1) Decedent waived stacking, whereas Gallagher did not sign a stacking waiver; (2) Decedent did not pay for stacking, whereas Gallagher did; and (3) Decedent's scooter policy was issued by Progressive rather than Defendant, whereas Gallagher had purchased stacked insurance coverage under two policies issued by the same insurer. (Doc. 23, at 12-14).[10] Defendant argues that *Gallagher* is limited to the very specific circumstances of that case, including that both Gallagher's policies were issued by the same insurer and that Gallagher paid for stacking rights.

Defendant's contention is not without support in statements made in *Gallagher*, namely the following: (1) "notably, [Gallagher] purchased both of [his] policies from GEICO"; (2) "Gallagher *opted and paid for stacked* UM and UIM coverage when purchasing both policies"; (3) "[o]ne of the insurance industries' age-old rubrics in this area of the law is that an insured should receive the coverage for which he has paid"; and (4) "[a]s in every case, we are deciding the discrete issue before the Court and holding that the household vehicle exclusion is unenforceable because it violates the MVFRL." *Gallagher*, 201 A.3d at 132-133, 138 n. 8 (emphasis added).

---

[10] The issue before the Court is whether Plaintiff is entitled to stack the UIM benefits provided by the Policy with the UIM benefits tendered under Decedent's scooter policy. (*See* Doc. 16). The issue before the court in *Gallagher,* too, was whether the HVE could be used to prevent stacking UIM policies. *Gallagher*, 201 A.3d at 138. It is for this reason that Defendant's reliance on cases that do not involve stacked polices – *e.g., Prudential Prop. & Cas. Ins. Co. v. Colbert*, 813 A.2d 747, 754 (2002); *Erie Ins. Exchange v. King*, No. 6937 CIVIL 2019 (Monroe Cnty. C.C.P. 2020) – is misplaced. (Doc. 24, at 10). Also not controlling are cases where the vehicle occupied during the accident is not covered with UIM insurance. *See, e.g., Dunleavy v. Mid-century Ins. Co.*, No. 2:19-CV-1304, 2020 WL 2536816, at *4 (W.D. Pa. May 19, 2020) ("If the vehicle involved in the accident doesn't have underinsured motorist coverage, then the policyholder can't stack anything on top of it because the policyholder hasn't paid for that privilege.").

Nevertheless, this Court joins other federal courts that have held:

> The Pennsylvania Supreme Court must be presumed to have meant what it said when it wrote that "household vehicle exclusions should not and cannot operate as a pretext to avoid stacking" and that "*these exclusions are unenforceable as a matter of law*," and this Court declines to read any limiting language into that clear pronouncement.

*Stockdale v. Allstate Fire & Cas. Ins. Co.*, No. CV 19-845, 2020 WL 953284, at *5 (E.D. Pa. Feb. 27, 2020)(quoting *Gallagher*, 201 A.3d at 138); *see also Donovan*, 392 F. Supp. 3d at 547.

Defendant's averment that the *Gallagher* holding should not apply when multiple insurers are responsible for multiple policies is directly contradicted by the language of that case. The court, addressing Justice Wecht's dissent, noted the anticipated impact of its decision on inter-policy claims involving "multiple . . . insurers," stating:

> We recognize that this decision may disrupt the insurance industry's current practices; however, we are confident that the industry can and will employ its considerable resources to minimize the impact of our holding. For example, when *multiple policies or insurers are involved*, an insurer can require disclosure of all household vehicles and policies as part of its application process.

*Gallagher*, 201 A.3d at 138 n. 6 (emphasis added).

Thus, the majority recognized that the scope of *Gallagher* encompasses claims involving policies issued by different insurers. Indeed, while Defendant latches onto the court's statement, "[o]ur focus here is narrow," that "phrase . . . was written in the context of explaining that the majority's opinion did not endanger other, non-household coverage exclusions such as 'exclusions related to racing and other inherently dangerous activities' and does not narrow the scope of its holding as to the household exclusion." *Stockdale*, 2020 WL 953284, at *5-6 ("The fact that Stockdale is seeking to stack policies purchased by two different insureds is also irrelevant. The MVFRL requires a knowing waiver of stacking regardless of who is buying the insurance or who the insurance is being bought from.").

The court in *Gallagher* also noted that *Baker*, 972 A.2d 507, was a non-binding plurality opinion and therefore not controlling – in fact, Justice Wecht in his dissent noted that the majority had essentially overruled *Baker*. *Gallagher*, 201 A.3d at 135, 141. As in the case before this Court, *Baker* involved multiple insurance policies from multiple insurers. Baker had purchased a three-vehicle stacked UIM policy from one insurer, subject to an HVE clause, and a UIM policy for his motorcycle from a different insurer. *Baker*, 972 A.2d at 509. He sustained injuries while riding his motorcycle and collected the UIM limits under that policy. *Baker*, 972 A.2d at 509. Baker's insurer of the three-vehicle auto policy, however, did not pay out the stacked UIM benefits, so Baker filed suit. *Baker*, 972 A.2d at 509. The court held that the auto policy's HVE was enforceable, noting that the HVE "is a valid and unambiguous *preclusion of coverage of unknown risks* [i.e., Baker's motorcycle], and it was properly applied to the circumstances of this case." *Baker*, 972 A.2d at 511 (emphasis added). In recognizing that *Baker* nonprecedential, without distinguishing *Baker* on its facts, the *Gallagher* court identifies that an HVE may be unenforceable in circumstances involving inter-policy stacking between multiple insurers despite insurers' vulnerability to "unknown risks." As the District Court for the Western District of Pennsylvania recently explained:

> At its core, *Gallagher* held that the household vehicle exclusion violates the MVFRL because it is an impermissible waiver of an individual's choice to select and pay for stacked UIM benefits. To this Court, that reasoning governs no matter who furnishes those benefits, whether it is one insurance company or two. … Again, had the *Gallagher* court intended to limit its holding with respect to "household vehicle exclusion" provisions, it need not have mentioned specifically how *Baker* was not binding precedent because it could have easily differentiated the facts of *Gallagher* by indicating that only one insurance company was involved. *See Gallagher*, 201 A.3d at 135 n.5.

14

*Nat'l Gen. Ins. Co. v. Sheldon*, 1:19-CV-212, 2020 WL 5797945, at *3 (W.D. Pa. Sept. 29, 2020).[11]

As such, Defendant's argument that it had no knowledge of the unknown risks in connection with Decedent's scooter, therefore, is futile.

*Gallagher* also applies to cases where an insured is entitled to stacking as a matter of statutory right and not merely where the insured has paid for stacking. The MVFRL and case law concerning stacking waivers make abundantly clear that absent a valid stacking waiver, the default coverage – stacking of UIM limits – applies. The decision in *Sackett I* quells any doubt on this issue, as the Court rejected the insurer's argument that merely because the "Sacketts did not pay for stacked coverage," they were not entitled to stacking. *Sackett*, 919 A.2d at 202. As Justice Castille's dissenting opinion reflects, "the Majority awards appellants a benefit for which they did not pay premium." *Sackett*, 919 A.2d at 205. Given the policy concerns driving *Gallagher* regarding *de facto* waivers of UIM stacking rights, the Court disagrees with Defendant's assertion that *Gallagher* only applies where the insured expressly opts and pays a premium for stacking. To hold otherwise would run counter to the plain intent

---

[11] *Cf. Barnhart v. Travelers Home & Marine Ins. Co.*, 417 F. Supp. 3d 653 (W.D. Pa. 2019), in which the court distinguished *Gallagher* based on the fact that Barnhart sought "UIM coverage for her injuries from a regularly used vehicle for which she paid no additional UM/UIM premiums" and because "Barnhart's motorcycle was insured by a different carrier from Barnhart's automobile insurer." *Barnhart*, 417 F. Supp. 3d at 657. The district court noted that "Travelers had no notice that its insured, Barnhart, would be operating or occupying a motorcycle. Had it known, Travelers could have adjusted its UIM coverage premiums to account for the additional risk to insure for UIM coverage for the motorcycle that Barnhart regularly used." *Barnhart*, 417 F. Supp. 3d at 657. It is, however, this precise concern that the court in *Gallagher* sought to ameliorate by putting the onus on insurers, when multiple policies or insurers are involved, to "require disclosure of all household vehicles and policies as part of its application process." *Gallagher*, 201 A.3d at 138. Furthermore, stacking (and the rule prescribing stacking as the default under § 1738) was not at issue in *Barnhart*. As such, this Court follows the clear import of the decision in *Gallagher*.

of the legislature in making stacking the default level of coverage and sanction "insurance compan[ies'] practice of including policy provisions that conflict with the clear language of the MVFRL . . . ." *Sayles v. Allstate Ins. Co.*, 219 A.3d 1110, 1127-1128 (Pa. 2019). Creating two categories of individuals who are otherwise entitled to stacking – ( 1) those who pay for stacking and are entitled to stacking benefits despite an HVE, and (2) those who are entitled to stacking under the mandate of § 1738 of the MVFRL (requiring a statutorily-prescribed waiver to opt out of stacking) but are nonetheless barred from coverage due to the same HVE – is untenable and contrary to the statute's plain language, the *Gallagher* court's reasoning, and controlling case law. An HVE may not operate to *de facto* waive stacking rights merely because the right to stacking arises by way of a statutorily-mandated default coverage.

If Decedent did not sign a Stacking Waiver as prescribed by the MVFRL, then his UIM benefits provided by Defendant shall be stacked and applicable regardless of the presence of an HVE. *See Gallagher*, 201 A.3d at 138. The fact that his scooter policy was provided by a different insurer is inconsequential, as is the fact that Decedent did not pay for stacked benefits. *See Gallagher*, 201 A.3d at 138 n. 6; *Sackett*, 919 A.2d at 202. However, if Decedent formally waived stacking through a statutorily-prescribed Stacking Waiver, then Defendant rightfully withholds coverage and is entitled to dismissal.

### 2. Decedent's Waiver of Stacking Benefits.

Since Defendant's HVE cannot operate to waive stacking benefits in this case, the issue becomes whether Plaintiff, as Executrix of Decedent's estate, is entitled to inter-policy, multi-insurer stacking – by statutory default – due to Defendant's failure to obtain a required Stacking Waiver upon the Blizmans' addition of a new vehicle to the Policy. Plaintiff's Amended Complaint states that "Travelers obtained a Rejection of Stacked Limits for UIM

coverage on three vehicles" at the time of the Policy's inception date on March 5, 2008. (Doc. 16, at 2). Plaintiff avers that a new Rejection of Stacked Limits for UIM coverage was required when a fourth vehicle was added to the Policy on January 8, 2009. (Doc. 16, at 3). Having failed to obtain a Stacking Waiver in 2009, "under current Pennsylvania law, the Travelers Auto Policy has stacked UIM coverage on two vehicles at the time of the incident…" (Doc. 16, at 3).

In determining whether new stacking waivers are required when an insured adds a vehicle to an existing insurance policy, the Court begins with *Sackett I* and *Sackett II*. The court in *Sackett I* held that "an insurer must provide a stacking waiver each time a new vehicle is added to the policy because the amount of coverage that may be stacked increases." *Sackett, 919 A.2d at 202*. The court noted that "an insured 'purchasing' UM/UIM coverage could not waive the actual stacked limits available to him or her unless that waiver was made after coverage for the newly added vehicle was purchased." *Sackett, 919 A.2d at 202* ("Mr. Sackett was denied the opportunity to waive the increased stacked limit of UM/UIM coverage because Nationwide did not provide the required rejection form").

On reargument, in *Sackett II*, the court clarified that "*Sackett I* does not preclude the enforcement of an initial waiver of stacked UM/UIM relative to coverage extended under after-acquired-vehicle [(AAV)] provisions of an existing multi-vehicle policy." *Sackett, 940 A.2d at 333*. Rather, "the extension of coverage under an *after-acquired-vehicle provision* to a vehicle added to a pre-existing multi-vehicle policy *is not a new purchase of coverage* for purposes of Section 1738(c), and thus, does not trigger an obligation on the part of the insurer to obtain new or supplemental UM/UIM stacking waivers." *Sackett, 940 A.2d at 334* (emphasis added)). The court noted, however, that *Sackett I* controls "and requires the execution of a

new waiver" where the AAV clause provides for finite coverage.[12] *Sackett*, 940 A.2d at 334. On the other hand, "to the degree that coverage under a particular after-acquired-vehicle provision *continues in effect throughout the existing policy period, subject only to conditions subsequent such as notice and the payment of premiums*, . . . *Sackett I* should not disturb the effect of an initial UM/UIM stacking waiver obtained in connection with a multi-vehicle policy." 940 A.2d at 334 (emphasis added)).[13]

Defendant relies heavily on a decision in this court which applied the holdings of *Sackett I* and *II*. In *Kuhns v. Travelers Home and Marine Insurance Co.*, 283 F. Supp. 3d 268 (M.D. Pa. 2017), the court applied the holdings of the *Sackett* cases to award summary judgment to an insurer-defendant based on an AAV clause. In *Kuhns*, the insureds purchased an auto policy from Travelers in May 2008 covering, as here, three vehicles. *Kuhns*, 283 F. Supp. 3d at 271. Mr. Kuhns opted for $100,000 in UM/UIM coverage but signed a waiver rejecting stacked benefits. *Kuhns*, 283 F. Supp. 3d at 271. In July 2008, the Kuhnses contacted their insurance agent requesting coverage for an additional vehicle. *Kuhns*, 283 F. Supp. 3d at 271. Travelers did not request or require Mr. Kuhns to complete any forms to add the new vehicle to the policy, nor did Travelers seek a new stacking waiver. *Kuhns*, 283 F. Supp. 3d at 271.

---

[12] As an example of "finite coverage," the court cited *Bird v. State Farm Mutual Automobile Insurance Company*, 142 N.M. 346, 165 P.3d 343 (2007), where "the court reviewed a policy containing an after-acquired-vehicle clause that extended coverage to new vehicles only until the thirty-first day after acquisition, thus requiring insureds to apply for a new policy to acquire coverage thereafter." *Sackett*, 940 A.2d at 333.

[13] On remand, in what is referred to as *Sackett III*, "the Superior Court found that, because the Sacketts' third vehicle was covered under the policy pursuant to an 'endorsement' and not the after-acquired-vehicle clause, the Sacketts had obtained 'collectable insurance,' which was independent of the automatic coverage offered under the after-acquired vehicle clause." *Kuhns*, 283 F. Supp. 3d at 278 (citing and quoting *Sackett v. Nationwide Mut. Ins. Co.*, 4 A.3d 637, 639 (Pa. Super. 2010)).

The "only paperwork that was generated by Travelers when the fourth vehicle was added to the Policy was an 'Automobile Policy Declarations' sheet" that reflected, as did the original Declarations sheet, "non-stacked [UM/UIM] benefits of $100,000 each accident." *Kuhns*, 283 F. Supp. 3d at 271. (internal quotation marks and citations to the record omitted).

Mr. Kuhns sustained injuries in a 2009 motor vehicle accident and submitted a claim for UIM coverage under the Travelers policy. *Kuhns*, 283 F. Supp. 3d at 271. Travelers paid $100,000 in non-stacked UIM benefits under the policy but refused to pay out stacked benefits for a $400,000 limit. *Kuhns*, 283 F. Supp. 3d at 271. The Kuhnses argued that they were entitled to stacked UIM coverage because Travelers did not obtain a new stacking waiver when they added a fourth vehicle to their policy. *Kuhns*, 283 F. Supp. 3d at 271. The court rejected this argument given the plain language of *Sackett II*, holding that the Kuhnses had added the fourth vehicle under a continuous, non-finite AAV clause,[14] and Mr. Kuhns's initial stacking waiver therefore remained valid through the accident resulting in his injuries. *Kuhns*, 283 F. Supp. 3d at 280. In other words, Travelers did not need to obtain a new waiver because the new vehicle was added to the policy under the AAV clause.

Affirming the District Court's order granting summary judgment, the Third Circuit reiterated the import of *Sackett I and II*: "if (1) the Kuhnses signed a valid stacking waiver; and

---

[14] The AAV clause provided, in relevant part, that a "'covered auto' means … 2. **Any of the following types of vehicles on the date you become the owner;** a. a private passenger auto" *if* three conditions were met: (1) the insured acquired the vehicle during the policy period; (2) the insured asks the insurer to insure the newly purchased vehicle "within 30 days after [the insured] become[s] the owner; and (3) "with respect to a pickup or van, no other insurance policy provides coverage for that vehicle." *Kuhns*, 283 F. Supp. 3d at 279 (emphasis in original). The AAV further provided that "[i]f the vehicle [] acquire[d] is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations." *Kuhns*, 283 F. Supp. 3d at 279.

(2) their insurance policy extends coverage for newly-added vehicles under an after-acquired-vehicles clause; and (3) that clause is continuous (rather than finite)," then "the waiver applies to the newly-added vehicle as well." *Kuhns*, 760 F. App'x at 131. The Third Circuit echoed that "the mere addition of a vehicle to an existing policy is not a purchase." *Kuhns*, 760 F. App'x at 133 (internal quotation marks omitted).

Here, Defendant contends that the AAV clause at issue in *Kuhns* is identical to the AAV clause contained in the Blizmans' policy and that *Sackett II* therefore compels dismissal of Plaintiff's Amended Complaint based on the Stacking Waiver, which remained valid through the date of Decedent's accident. (Doc. 23, at 36). However, the Blizmans' 2009 policy in effect when the additional car was added has not been attached as an exhibit, therefore is not part of the record.[15] *Kuhns*, importantly, was decided in a summary judgment posture. As the court there noted, "when the Kuhns subsequently acquired a fourth vehicle . . . coverage [] began being extended to that vehicle pursuant to the Policy's after-acquired-vehicle clause. *The reason for this is that requisite conditions of that clause were satisfied*." *See Kuhns*, 283 F. Supp. 3d at 280 (emphasis added)). Namely, the "parties d[id] not dispute that the Kuhns's fourth vehicle was added to the Policy within 30 days of it having been purchased." *Kuhns*, 283 F. Supp. 3d at 271.[16] The same cannot be said here, as the Court is presented only with Plaintiff's

---

[15] The Court notes that Defendant's Table of Exhibits attached to its Motion to Dismiss purports to include the 2009 policy as Exhibit C, however only Exhibit B (the 2008 Stacking Waiver) was included. (Doc. 23-1; Doc. 23-2).

[16] Additionally, "the parties [did] not dispute that the addition of the fourth vehicle to the existing Policy constituted a 'covered auto' as defined in Section J.2. of that Policy." *Kuhns*, 283 F. Supp. 3d at 271. At this stage, Plaintiff may still dispute which portions of the Policy are applicable, thus it would be premature to assume that the AAV is necessarily implicated.

pleading, which otherwise states a claim for relief, *see infra*. The 2009 Policy is not before the Court, therefore Defendant's contention that the Blizmans added the fourth vehicle to the Policy under the AAV clause assumes a fact (that any conditions precedent were satisfied) which is not borne out by the allegations in the amended complaint itself. (*See* Doc. 16).

Because the Stacking Waiver in the Policy at issue falls outside the pleadings (and any exhibits attached to the pleadings or motions), it cannot provide basis for granting dismissal here.[17] Whether the Blizmans added their fourth vehicle pursuant to a continuous AAV is a fact-sensitive inquiry that does not lend itself to disposition on the pleadings. Notably, with few exceptions, all the cases cited by both parties in support of their respective positions were decided at the summary judgment stage. Indeed, in *Prudential Prop. & Cas. Ins. Co. v. Colbert*, 813 A.2d 747, 752 (Pa. 2002), relied upon by Defendant, the Pennsylvania Supreme Court noted that "the application of public policy concerns in determining the validity of an insurance exclusion is dependent upon the factual circumstances presented in each case." *Colbert*, 813 A.2d at 752.[18] Because Plaintiff has asserted a plausible ground for

---

[17] The only policy before the Court which includes an AAV is for a policy period beginning February 1, 2006, and ending February 1, 2007. (Doc. 1-1, at 42, 47). There is no record evidence that this policy was identical to the effective policy when the fourth vehicle was added in 2009. (*See* Doc. 16, at 2-3).

[18] The cases that were decided on a motion to dismiss are inapposite. For example, in *Dunleavy*, 2020 WL 2536816, the district court granted judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure where the insured was in an accident while occupying a motorcycle that did not have UIM coverage, yet claimed UIM benefits under a separate policy. The insured was not able to claim stacked UIM benefits on the separate policy because "there [wa]s no underinsured motorist coverage on which to 'stack' . . . ." *Dunleavy*, 2020 WL 2536816, at *4. Here, in contrast, it has not been established that Decedent's scooter did not have UIM coverage on which to stack additional UIM benefits. In deciding a motion to dismiss in *Barnhart*, 417 F. Supp. 3d at 656, the court focused on the enforceability of the "regular use exclusion," not an HVE. *Barnhart*, 417 F. Supp. 3d

relief based on Defendant's failure to obtain a new stacking waiver in 2009, the Court will deny Defendant's motion to dismiss on the stacking-waiver ground. (Doc. 16, at 2-3).

## III.  CONCLUSION

The question before this Court is narrow – has Plaintiff stated a claim for relief assuming her allegations are true and drawing all reasonable inferences in her favor? The Court finds that Plaintiff has done so. Defendant has failed to establish that Plaintiff's amended complaint fails to state a claim upon which relief can be granted. Indeed, apart from the HVE and Stacking Waiver arguments, Defendant does not contend that Plaintiff failed to establish the elements of her claim.[19] "Under Pennsylvania law, a breach of contract claim requires that a plaintiff establish: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." *Toner v. GEICO Ins. Co.*, 262 F. Supp. 3d 200, 204 (E.D. Pa. 2017) (footnote omitted) (bracket in original) (internal quotation marks omitted). Plaintiff has sufficiently plead all three elements of this claim.

---

at 656, *appeal dismissed sub nom. Barnhart v. Travelers Home & Marine Ins*, No. 19-3646, 2020 WL 2530197 (3d Cir. Mar. 30, 2020).

[19] Furthermore, in light of the Superior Court of Pennsylvania's recent holding in Eerie Ins. Exchange v. Petrie, --- A.3d ----, 2020 WL 6777174 (Pa. Super. 2020), the Stacking Waiver may be ineffective as to the Blizmans' policies involving multiple insurers. *See* Petrie, --- A.3d ----, 2020 WL 6777174 at *4 ("Because the stacking waiver did not explicitly provide for inter-policy stacking, Decedent could not have made a knowing decision to do so when he signed the policy."). The Pennsylvania Supreme Court recently granted the Petition for Certification of Law filed by the United States Court of Appeals for the Third Circuit to address this issue. Petrie, --- A.3d ----, 2020 WL 6777174, at *5 n.7.

For the foregoing reasons, Defendant's motion to dismiss (Doc. 23) is **DENIED**. An appropriate Order will follow.

**BY THE COURT:**

**Dated: December 1, 2020**                    *s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**