UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

EDITH M. BLIZMAN,

                Plaintiff,

     v.

THE TRAVELERS HOME AND
MARINE INSURANCE COMPANY,

                Defendant.

CIVIL ACTION NO. 3:19-CV-01539

(MEHALCHICK, M.J.)

## MEMORANDUM OPINION

Before the Court are three Motions for Summary Judgment in an insurance-coverage action arising from a collision which caused the death of Plaintiff's husband, Joseph Blizman ("Decedent"). Plaintiff Edith M. Blizman, the Executrix of Decedent's estate, seeks a declaration that Defendant's insurance policy provides underinsured motorist coverage for the injury suffered by Decedent at the time of the June 9, 2019, motor vehicle accident. (Doc. 16, at 6). The first motion before the Court is a Motion for Partial Summary Judgment filed by Plaintiff on December 10, 2020. (Doc. 51). The second is a Motion for Summary Judgment filed by Defendant Travelers Personal Insurance Company ("Travelers") on May 25, 2021. (Doc. 65). The third is a Motion for Summary Judgment filed by Plaintiff on June 1, 2021. (Doc. 68).

I.    **BACKGROUND AND PROCEDURAL HISTORY**

This matter comes before the Court upon Defendant's removal from state court to federal court on September 5, 2019. (Doc. 1). After removal, Plaintiff filed an Amended

Complaint on February 21, 2020, which stands as the operative complaint in the matter ("the Complaint"). (Doc. 16). The parties subsequently consented to the undersigned's jurisdiction pursuant to 28 U.S.C. § 636(c)(1). (Doc. 17, at 9; Doc. 18).

The allegations of Plaintiff's Complaint are described in full in the Court's Memorandum and Order of December 1, 2020. (Doc. 49; Doc. 50). The Blizmans obtained a car insurance policy from Defendant in March 2008 for three vehicles which they owned ("the Policy"). (Doc. 16, at 2-3). Defendant obtained a waiver of stacked limits for underinsured motorist ("UIM") coverage at this time, showing a rejection of "stacked limits of [UIM] coverage under the policy for myself and members of my household" ("the Stacking Waiver"). (Doc. 16, at 2-3; Doc. 23-2, at 2). Also allegedly contained in the Policy was a Household Vehicle Exclusion ("HVE") which exempted bodily injury sustained "by any person … [w]hile 'occupying,' or when struck by, any motor vehicle owned by you or any 'family member' which is not insured for this coverage under this policy…" (Doc. 16, at 4).

When the Policy was amended in January 2009 to add a fourth vehicle, Decedent was not provided a new opportunity to reject stacked coverage. (Doc. 16, at 2-3; Doc. 23-2, at 2). In June 2019, a collision occurred in which Decedent suffered fatal injuries while driving his scooter. (Doc. 9-1, at 5). The scooter was insured by Progressive Insurance for UIM coverage up to $25,000. (Doc. 9-1, at 5). The tortfeasor's vehicle was insured by GEICO for bodily injury up to $25,000. (Doc. 9-1, at 5). At the time of the collision, the Policy provided for $100,000 in unstacked UIM coverage for each of the Blizmans' two covered vehicles, and Plaintiff pursued UIM benefits under the Policy. (Doc. 16, at 2, 5; Doc. 1-1, at 16). Plaintiff

2

seeks a declaration that the Policy provides stacked UIM coverage over Decedent's injuries. (Doc. 16, at 6).

Defendants filed a Motion to Dismiss on March 6, 2020, which was denied. (Doc. 23; Doc. 50). The instant Motions for Summary Judgment followed. (Doc. 51; Doc. 65; Doc. 68). Both sides have fully briefed the Motions and they are now ripe for disposition. (Doc. 55; Doc. 58; Doc. 59; Doc. 66; Doc. 70; Doc. 73; Doc. 75; Doc. 76; Doc. 77).

## II.   Motion for Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Telephone Co. of Pennsylvania*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility

3

determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Fed. R. Civ. P. 56(c)*; *Celotex*, 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential).

III.   **STATEMENT OF FACTS**

This factual background is taken from the parties' Statements of Facts in support of their motions, along with accompanying exhibits. (Doc. 53; Doc. 67; Doc. 69). As required by Local Rule 56.1, all material facts set forth in the Statements will be deemed admitted unless controverted in the opposing parties' Statements. Where a party disputes facts and

supports those disputes in the record, as also required by Local Rule 56.1, those disputes are noted.

Plaintiff Edith M. Blizman is the surviving widow of the Decedent, Joseph Blizman. (Doc. 69, ¶ 1; Doc. 74, ¶ 1). Plaintiff resides at 29 West Chestnut Street in Wilkes-Barre, Luzerne County, Pennsylvania, 18205. (Doc. 69, ¶1; Doc. 74, ¶ 1). The Decedent passed away on June 9, 2019, as a direct result of traumatic injuries suffered in a motor vehicle accident, as described *infra*. (Doc. 53, ¶ 2; Doc. 56, ¶ 2). Plaintiff was appointed Executrix of Decedent's estate by the Luzerne County Register of Wills on June 21, 2019. (Doc. 53, ¶ 3; Doc. 56, ¶ 3). The Estate was assigned number 40-19 1282 in Luzerne County. (Doc. 53, ¶ 3; Doc. 56, ¶ 3).

Plaintiff avers that Defendant Travelers Personal Insurance Company a/k/a The Travelers Indemnity Company a/k/a Travelers Property Casualty Companies is a corporate entity authorized to conduct business in the Commonwealth of Pennsylvania, with a place of business located at 1 Tower Square, Hartford, Connecticut, 06183. (Doc. 53, ¶ 4; Doc. 69, ¶ 4). Defendant disputes this, submitting that The Travelers Home and Marine Insurance Company issued the subject Travelers Policy, and that this corporation, with a principal place of business in Connecticut, is authorized to conduct business and issues automobile insurance policies in the Commonwealth of Pennsylvania. (Doc. 56, ¶ 4; Doc. 74, ¶ 4).[1] Travelers is in

---

[1] The record reflects that "The Travelers Home and Marine Insurance Company" issued the Policy. (Doc. 51-2, at 4). Since it appears that the correct and intended entity was served and has been represented in these proceedings, the "misnomer" rule applies and Plaintiff's error is of no consequence. *See United States v. Kates*, 419 F.Supp. 846, 856 (E.D. Pa. 1976). The Court now *sua sponte* corrects that misnomer. *See Gallaher v. Hartford Life & Acc. Ins. Co.*, No. 03:05-460, 2007 WL 1575508, at *1 n.1 (W.D. Pa. May 30, 2007). Defendant is hereinafter referred to as "Travelers."

the business of insuring individuals relative to the ownership and use of motor vehicles in the Commonwealth of Pennsylvania, including but not limited to insuring individuals for Underinsured Motorist coverage (UIM). (Doc. 53, ¶ 5; Doc. 56, ¶ 5).

On June 9, 2019, Plaintiff and Decedent were insured under a policy of insurance issued by Travelers which covered two automobiles owned by Plaintiff and Decedent. (Doc. 53, ¶ 6; Doc. 51-2, at 6; Doc. 56, ¶ 6). The Policy included coverage for UIM in the amount of $100,000 each person/$100,000 each accident. (Doc. 53, ¶ 7; Doc. 51-2, at 7; Doc. 56, ¶ 7). The Policy's inception date was March 5, 2008. (Doc. 53, ¶ 8; Doc. 51-3, at 2; Doc. 56, ¶ 8). At the time of the Policy's inception, three vehicles were insured under the Policy and Travelers obtained a Rejection of Stacked Limits for UIM coverage on the three vehicles. (Doc. 69, ¶ 8; Doc. 51-3, at 2, 9; Doc. 74, ¶ 8).

In a "change" to the Policy effective January 8, 2009, a fourth vehicle was added (a Jeep Cherokee). (Doc. 69, ¶ 9; Doc. 51-4, at 2; Doc. 74, ¶ 9). The Jeep Cherokee was purchased by Plaintiffs from a friend for use by Plaintiffs' daughter. (Doc. 69, ¶ 10; Doc. 74, ¶ 10; Doc. 68-4, at 3). At the time the Jeep Cherokee was purchased, Decedent called the insurance agency to report the vehicle's purchase before it was driven by his daughter. (Doc. 69, ¶ 10; Doc. 68-4, at 4; Doc. 74, ¶ 10). An amended Automobile Policy Declarations sheet for the Travelers Policy was issued to memorialize this addition. (Doc. 67, ¶ 11; Doc. 72, ¶ 11; Doc. 65-5, at 2). The Declarations sheet continued to reflect non-stacked UIM coverage benefits of $100,000.00 each person/$100,000.00 each accident. (Doc. 67, ¶ 11; Doc. 72, ¶ 11; Doc. 65-5, at 3). Defendant did not obtain a new rejection form following the addition of the fourth vehicle. (Doc. 53, ¶ 10; Doc. 56, ¶ 10).

6

In a "change" to the Policy effective December 5, 2009, a vehicle was removed (Corsica) resulting in three vehicles remaining under the Policy. (Doc. 53, ¶ 11; Doc. 51-5, at 2; Doc. 56, ¶ 11). Defendant did not obtain a new rejection form following the removal of the fourth vehicle. (Doc. 53, ¶ 12; Doc. 56, ¶ 12). Plaintiff states that in a renewal of the Policy dated September 5, 2014, a vehicle was removed (Pontiac Grand Am) resulting in two vehicles remaining under the Policy. (Doc. 69, ¶ 14). However, the exhibit cited by Plaintiff shows that on June 2, 2014, a change was issued showing a decrease in the premium owed for the remainder of the policy period, with the policy period ending on September 5, 2014. (Doc. 68-6). This document shows the Pontiac Grand Am remaining on the Policy. (Doc. 68-6, at 2). Defendant did not obtain a new rejection form following this change. (Doc. 69, ¶ 15; Doc. 74, ¶ 15).

On June 9, 2019, Decedent was operating a scooter northbound on Airport Road in Dupont Borough, Luzerne County, Pennsylvania, when he stopped at the stop sign to make a left turn onto Main Street. (Doc. 69, ¶ 16; Doc. 74, ¶ 16). On this date, Decedent's scooter was insured by Progressive Insurance Company. (Doc. 69, ¶ 17; Doc. 74, ¶ 17). While Decedent was stopped, the tortfeasor, Salvatore Acculto, was traveling in a vehicle owned by Rita Marie Tracy in the same direction behind Decedent on Airport Road when the tortfeasor struck Decedent's scooter, knocking Decedent to the ground, and continued to drive over him without stopping. (Doc. 69, ¶ 18; Doc. 74, ¶ 18). Decedent initially survived the impact but later succumbed to the traumatic injuries despite efforts by emergency personnel at the scene. (Doc. 69, ¶ 19; Doc. 74, ¶ 19).

Defendant's Policy contains the following exception for UIM/UM coverage:

> We do not provide Uninsured Motorist Coverage for "bodily injury" sustained by any person
>
> 1. While "occupying," or when struck by, any motor vehicle owned by you or any "family member" which is not insured for this coverage under this policy…

(Doc. 69, ¶ 20; Doc. 74, ¶ 20).

This provision is known as the "family car exclusion" or the "household vehicle exclusion." (Doc. 69, ¶ 21; Doc. 74, ¶ 21). As a result of the incident which killed Decedent, Plaintiff put Defendant on notice of a UIM claim under the Policy by letter dated June 24, 2019. (Doc. 69, ¶ 22, Doc. 51-8). Defendant states that this letter was never received by Defendant due to discontinued use of the post office box to which the letter was sent. (Doc. 74, ¶ 22).

On July 1, 2019, Geico, the insurer of the Tracy vehicle that was operated by Mr. Acculto, offered the Bodily Injury (BI) limit on the Tracy auto policy ($25,000) it had issued. (Doc. 69, ¶ 24; Doc. 74, ¶ 24). On July 3, 2019, Progressive waived subrogation and consented to the settlement under the Geico-issued Tracy policy. (Doc. 69, ¶ 25; Doc. 74, ¶ 25). On July 8, 2019, Progressive issued a check to Plaintiff for $25,000 representing the UIM policy limit under the Progressive Scooter Policy. (Doc. 69, ¶ 26; Doc. 74 ¶ 26). On July 29, 2019, Plaintiff sent a follow-up letter to Defendant with a request that Defendant acknowledge and pay the Policy's UIM coverage. (Doc. 69, ¶ 27; Doc. 51-12). Defendant states that this letter was never received by Defendant due to discontinued use of the post office box to which the letter was sent. (Doc. 74, ¶ 27). On July 30, 2019, Plaintiff accepted the Geico offer made on July 1, 2019. (Doc. 69, ¶ 29; Doc. 51-13; Doc. 74, ¶ 29).

On August 9, 2019, Plaintiff commenced the current matter by filing a civil complaint in the Court of Common Pleas for Luzerne County. (Doc. 69, ¶ 31; Doc. 74, ¶ 31). Defendant

removed the action to this Court, and subsequent thereto, a First Amended Complaint was filed. (Doc. 69, ¶ 31; Doc. 74, ¶ 31).

IV.   **DISCUSSION**

In her Motion for Partial Summary Judgment, Plaintiff makes two arguments. (Doc. 55, at 3-4). First, she asserts that the Court's Memorandum and Order filed on December 1, 2020, establishes that the HVE within the Policy is unenforceable as a matter of law. (Doc. 51, at 6-7). Second, Plaintiff submits that Pennsylvania law recently established that waiver forms, such as the one obtained by Travelers, are ineffective as to inter-policy stacking of coverage. (Doc. 51, at 7). The waiver cannot preclude inter-policy stacking even if "all necessary waivers were appropriately obtained, including Travelers' alleged lack of need to obtain additional waivers under the policy's After Acquired Vehicle provision ('AAV')." (Doc. 51, at 7).

In its Motion for Summary Judgment, Defendant avers that Pennsylvania law establishes that the stacking waiver signed by Decedent at the inception of the Policy in 2008 was effective on the date of the accident. (Doc. 66, at 19). Defendant asserts that the "After-Acquired Vehicle Clause" (AAV) in the Policy is continuous in nature and that when vehicles are added and covered by continuous AAV's, no additional stacking waivers are required. (Doc. 66, at 16-19). Defendant contends that with a valid signed stacking waiver, the HVE should be deemed enforceable. (Doc. 66, at 20-30).

Finally, in her most recent Motion for Summary Judgment, Plaintiff asserts that Pennsylvania law renders the HVE at issue in this case unenforceable, and that with the addition of a new vehicle to the Policy in 2009 a new stacking waiver was required to preclude any type of stacking. (Doc. 70). Plaintiff submits that the AAV clause was not used when the

9

vehicle was purchased in 2009, so a new stacking waiver was required upon acquisition of that vehicle. (Doc. 70, at 10-16).

    A. THE 2008 STACKING WAIVER'S APPLICABILITY TO INTER-POLICY STACKING

Plaintiff submits that a "standard" stacking waiver which does not provide notice of its effect on *inter*-policy stacking will not serve to waive inter-policy stacking. (Doc. 55, at 5). According to Plaintiff, *Erie Ins. Exchange v. Petrie*, —— A.3d ——, 2020 WL 6777174 (Pa. Super. 2020) directs that a standard stacking waiver does not give the insured notice that he or she is waiving stacking of the applicable limits of the policy to a second policy. (Doc. 55, at 4-5). Since the stacking waiver at issue was "standard," Plaintiff asserts that even if it was valid at the time of the collision, it still did not give her "requisite notice that [sic] of preclusion of *inter*-policy stacking," and so the holding in *Petrie* prohibits such "additional waiver." (Doc. 55, at 5) (emphasis in original). Plaintiff also brings to the Court's attention the recent Pennsylvania Supreme Court opinion in *Donovan v. State Farm Mutual Auto. Ins. Co.*, --- A.3d ----, 2021 WL 3628706 (Pa. Aug. 17, 2021). (Doc. 78).

Defendant contends that *Petrie* is not binding on this Court. (Doc. 58, at 9). According to Defendant, *Petrie* "overly expands the holding in *Gallagher*" and "*Gallagher* must control." (Doc. 58, at 9). "The *Petrie* decision inappropriately expands and misconstrues the *Gallagher* decision in the same way that *Donovan v. State Farm Mutual Auto. Ins. Co.*, 2019 U.S. Dist. LEXIS 108460 (E.D. Pa. 2019) did." (Doc. 58, at 10).

The Supreme Court of Pennsylvania recently clarified that stacking waivers such as the one at issue here are inapplicable to inter-policy stacking when multiple vehicles are insured under the policy containing the waiver. *Donovan*, 2021 WL 3628706, at *10. In

10

*Donovan*, one plaintiff, Corey, was injured when a motorcycle he was driving collided with an underinsured vehicle. *Donovan*, 2021 WL 3628706, at *1. Corey recovered the policy limit on the underinsured vehicle as well as the UIM coverage limit available under the insurance policy on his motorcycle. *Donovan*, 2021 WL 3628706, at *1. Corey then attempted to recover under an automobile policy issued to his mother, Linda, by State Farm, under which he was insured as a resident relative.[2] *Donovan*, 2021 WL 3628706, at *1. Linda's policy insured three automobiles but did not insure Corey's motorcycle. *Donovan*, 2021 WL 3628706, at *1. Linda signed a valid waiver of stacked UIM coverage on her policy, which stated:

### UNDERINSURED COVERAGE LIMITS

> By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

*Donovan*, 2021 WL 3628706, at *1.

State Farm denied coverage for Corey's injuries because Linda's mother had signed this stacking waiver form. *Donovan*, 2021 WL 3628706, at *3. Corey and Linda sought declaratory relief, claiming "that Linda's waiver of stacking was invalid as to inter-policy stacking and that Corey should receive the benefit of stacked UIM coverage which would provide up to an additional $100,000 of UIM coverage under Linda's Auto Policy on top of the $50,000 Corey received from the Motorcycle Policy." *Donovan*, 2021 WL 3628706, at *3.

---

[2] Linda was the second plaintiff in this case. *Donovan*, 2021 WL 3628706, at *3.

In analyzing the applicability of the stacking waiver contained in Linda's automobile policy, the court explained that the language of that waiver is binding. *Donovan*, 2021 WL 3628706, at *10. As for the effect of that language,

> [The form's] language informs insureds that they are waiving intra-policy stacking as they will not be provided the 'sum of the limits for each motor vehicle under the policy.' It does not, however, alert insureds that they are waiving the ability to stack the coverage for which premiums were paid in 'this policy' on top of the coverage available under a separate policy.  In other words, it does not provide the necessary knowing waiver of inter-policy stacked coverage, absent the single-vehicle situation in *Craley*.

> *Donovan*, 2021 WL 3628706, at *10 (citing *Craley v. State Farm Fire and Casualty Co.*, 895 A.2d 530 (Pa. 2006)).

The court highlighted that the waiver form repeatedly references the limits of "the policy" without "addressing the effect of the waiver when multiple insurance policies apply for purposes of inter-policy stacking." *Donovan*, 2021 WL 3628706, at *2. "[T]his Court [previously] questioned whether the form's language provides insureds with the necessary information to allow a knowing waiver of inter-policy stacking due to the form's use of the singular term 'policy.'" *Donovan*, 2021 WL 3628706, at *2. *Donovan* confirms that the form's language does not allow for such knowing waiver. *Donovan*, 2021 WL 3628706, at *10.

Here, the record shows that the only stacking waiver which *could* be in effect at the time of the collision contained the following language: "By signing this waiver, I am rejecting stacked limits of underinsured motorists coverage under the *policy* for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under *the policy*." (Doc. 51-3, at 9) (emphases added). The language of the waiver form at issue here is identical to the language of the waiver form in *Donovan*. (Doc. 51-3, at 9); *see Donovan*, 2021 WL 3628706, at *1. Just as in *Donovan*, the

12

Blizmans had multiple cars insured under the Policy at the time the stacking waiver was signed. (Doc. 51-3, at 1); *see Donovan*, 2021 WL 3628706, at 1. Because the waiver refers only to the singular "policy," it does provide notice to allow for a knowing waiver of inter-policy stacking. *Donovan*, 2021 WL 3628706, at *10. As such, no matter its validity at the time of the accident, the waiver signed by the Blizmans is ineffective as to inter-policy stacking. *See Donovan*, 2021 WL 3628706, at *10. Plaintiff is **GRANTED** partial summary judgment and is entitled to inter-policy stacking under the Policy. (Doc. 51).

B. The Validity of the 2008 Stacking Waiver at the Time of the Accident[3]

Defendant asserts that as a matter of law, the stacking waiver it acquired from Plaintiff in 2008 remains valid, as the the Pennsylvania statute which addresses stacking and mandates the waiver form does not call for a new waiver each time a vehicle is added to a policy. (Doc. 66, at 10-11) (citing 75 Pa. C.S. § 1738). Additionally, Defendant submits that "the Pennsylvania Supreme Court has expressly concluded that insurers are not required to obtain an additional stacking rejection form under facts [] substantially similar to those at issue[.]" (Doc. 66, at 11-12).

Plaintiff asserts that Pennsylvania law establishes that the waiver signed in 2008 was ineffective at the time of the accident because when a vehicle was added to the policy, additional UM/UIM coverage was purchased, and with that purchase, Defendant was obligated to offer another opportunity to waive stacking. (Doc. 73, at 4-8). Plaintiff submits

---

[3] If the 2008 stacking waiver effectively precludes *intra*-policy stacking, Plaintiff may recover less than if intra-policy stacking was not waived at the time of the accident. *See Donovan*, 2021 WL 3628706, at *3 n.4.

that because Travelers was notified of the additional vehicle prior to the vehicle's physical acquisition, a newly executed stacking waiver was necessary for stacking to be waived. (Doc. 70, at 10-11).

> Under Pennsylvania law,
>
> When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.
>
> 75 Pa. Cons. Stat. Ann. § 1738(a).

This creates a presumption that UIM coverage is to be stacked. *State Auto Prop. & Cas. Ins. Co. v. Pro Design P.C.* 566 F.3d 86, 89-90 (3d Cir. 2009).

However, "a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured." 75 Pa. Cons. Stat. Ann. § 1738(b). For stacking to be waived, the insured must execute a stacking waiver containing the language prescribed by 75 Pa. Cons. Stat. Ann. § 1738(d). 75 Pa. Cons. Stat. Ann. § 1738(c)-(d). Plaintiff in this matter submits that the presumption that UIM coverage is to be stacked should result in stacked benefits because a stacking waiver was not executed when vehicles were added to the Policy. (Doc. 70, at 10-11). Defendant's position is that the stacking waiver executed in 2008 in accordance with 75 Pa. Cons. Stat. Ann. § 1738(c)-(d) should be effective in waiving stacked coverage at the time of the accident. (Doc. 66, at 10-12).

Whether the stacking waiver obtained by Defendant on March 5, 2008 ("the Waiver") was valid at the time of the accident depends on whether it remained in effect after a new vehicle was added to the policy. Every time UM/UIM insurance is purchased by adding a vehicle to an existing policy, a new stacking waiver must be executed. *Sackett v. Nationwide Mut. Ins. Co.*, 919 A.2d 194, 196-97 (Pa. 2007) ("*Sackett I*"). However, if coverage is extended to a vehicle added to an existing policy through a continuous after-acquired vehicle clause, then a new stacking waiver need not be executed even if premiums are raised. *Sackett v. Nationwide Mut. Ins. Co.*, 940 A.2d 329, 334 (Pa. 2007) (*"Sackett II"*). As such, the crux of this case is whether the vehicle acquired in 2009 was added through an after-acquired vehicle clause. If it was, then a newly executed stacking waiver was not necessary and the 2008 waiver was still in effect at the time of the accident. *See Sackett II*, 940 A.2d at 334. If the vehicle was not subject to the after-acquired vehicle clause, then a new stacking waiver was required and the presumption that UIM coverage should be stacked is controlling.[4] *See Sackett I*, 919 A.2d at 196-97.

At the time of this opinion, the Supreme Court of Pennsylvania has not addressed the application of an after-acquired vehicle clause to a vehicle added to a policy's declaration page at the time of acquisition. Therefore, the law of the Superior Courts remains the law of the Commonwealth on this issue. *See Sheridan v. NGK Metals Corp.*, 614 F. Supp. 2d 536, 546

---

[4] The issue of whether the after-acquired vehicle clause is continuous or finite is only relevant if the vehicle is covered pursuant to the after-acquired vehicle clause. *Sackett II*, 940 A.2d at 334 ("However, where coverage under an after-acquired-vehicle clause is expressly made finite by the terms of the policy, *Sackett I* controls and requires the execution of a new UM/UIM stacking waiver upon the expiration of the automatic coverage in order for the unstacked coverage option to continue in effect subsequent to such expiration.") (internal citations and footnotes omitted).

(E.D. Pa. 2008) ("In Pennsylvania, unless and until the Superior Court's decision is overruled by the Supreme Court of Pennsylvania, it remains the law of the Commonwealth.") (citing *Pennsylvania v. Martin*, 727 A.2d 1136, 1141 (Pa. Super. Ct. 1999)).

In 2019, the Superior Court of Pennsylvania addressed a situation in which an insured who had signed a stacking waiver form at the inception of his policy subsequently added two vehicles to the existing policy. *Kline v. Travelers Personal Sec. Ins. Co.*, 223 A.3d 677, 681 (Pa. Super. Ct. 2019). At the time the vehicles were added to the policy, the insured notified his insurance agent and amended Automobile Policy Declarations sheets were issued which showed the addition of the vehicles to the policy. *Kline*, 223 A.3d at 681. The insured was not presented with new stacking rejection forms. *Kline*, 223 A.3d at 681. Approximately ten years after the plaintiff signed the stacking waiver at the inception of the policy – and after the two vehicles were added to the policy – the plaintiff was involved in a motor vehicle accident. *Kline*, 223 A.3d at 681-82. Plaintiff sought to stack UIM coverage under his policy. *Kline*, 223 A.3d at 682. The pertinent section ("Section J") of the plaintiff's policy – which was identical to the pertinent section of the Policy in the case at bar – stated:

J. "Your covered auto" means:

1. Any vehicle shown in the Declarations.

2. Any of the following types of vehicles on the date you become the owner:

    a. a private passenger auto; or

    b. a pickup or van.

This provision (J.2) applies only if:

    a. you acquire the vehicle during the policy period;

> b. you ask us to insure it within 30 days after you become the owner; and

> c. with respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

> If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced. You must ask us to insure a replacement vehicle within 30 days only if:

> a. you wish to add or continue Damage to Your Auto Coverages; or

> b. it is a pickup or van used in any "business" other than farming or ranching.

*Kline*, 223 A.3d at 681-82; (Doc. 65-2, at 30).

The trial court in *Kline* stated that the plaintiff

> notified [Travelers] each time he acquired an additional vehicle. [Travelers] subsequently generated amended declaration sheets in conjunction with [Appellant/Cross-Appellee Kline]'s notification. On both occasions, [Appellant/Cross-Appellee Kline]'s premium increased to reflect the additional vehicles…. Based on the foregoing, it appears that [Appellant/Cross Appellee Kline]'s vehicles were added to the Policy *via* endorsements and were covered by the general terms of the Policy as opposed to the after-acquired vehicle clause….

*Kline*, 223 A.3d at 687-88 (bracket contents and emphasis in original).

The trial court also held that the plaintiff made "purchases" for purposes of 75 Pa.C.S. § 1738 when his premiums increased as vehicles were added to his policy. *Kline*, 223 A.3d at 688.

For these reasons, the trial court held that Travelers "failed its obligation to obtain new stacking waiver from [Appellant/Cross-Appellee Kline] at the time the 2001 Pontiac Montana and the 2003 Pontiac Vibe were added to the Policy." *Kline*, 223 A.3d at 688.

The Superior Court of Pennsylvania affirmed the trial court's conclusion and reasoning, stating, "The record supports the court's rationale. The trial court correctly

17

determined Appellant/Cross-Appellee Kline is entitled to pursue stacked UIM benefits under his Policy." *Kline*, 223 A.3d at 688 (internal citations omitted). The trial court had correctly applied recent binding Pennsylvania case law on the subject. *Kline*, 223 A.3d at 688.

As mentioned *supra*, the Policy at issue in the case at bar is identical to the policy addressed in *Kline*. *Kline*, 223 A.3d at 681-82; (Doc. 65-2, at 30). As in *Kline*, it is undisputed that Plaintiff notified Defendant when the new vehicle was acquired – Plaintiff testified that Defendant was provided notice of the vehicle added in 2009 prior to it being driven – and declaration sheets were amended in conjunction with notice.[5] (Doc. 69, ¶¶ 10-11; Doc. 74, ¶¶ 10-11; Doc. 68-4, at 3-4; Doc. 65-5, at 2); *see Kline*, 223 A.3d at 687-88. In both *Kline* and the matter at bar, insurance premiums were raised to reflect the additional vehicles. (Doc. 65-5, at 2); *see Kline*, 223 A.3d at 688. In *Kline*, the Superior Court endorsed the trial court's holding that the vehicles were added to the insurance policy through endorsements when the insured notified the insurer at the time the additional vehicle was acquired, an amended declaration sheet was subsequently generated in conjunction with notification, and premiums increased to reflect the additional vehicles. *Kline*, 223 A.3d at 687-88. Those conditions are present here, as well. (Doc. 69, ¶¶ 10-11; Doc. 74, ¶¶ 10-11; Doc. 68-4, at 3-4; Doc. 65-5, at 2). Thus, *Kline* compels the conclusion that the vehicles added to Plaintiff's Policy were covered by the general terms of the Policy and not the after-acquired vehicle clause. *See Kline*, 223 A.3d at 687-88.

---

[5] The Policy expressly states that "[t]he Declarations is a part of this policy." (Doc. 68-5, at 26).

The cases cited by Defendant for the premise that Plaintiff's additional vehicles were added pursuant to the after-acquired vehicle clause are distinguishable in important ways.[6] In 2017, this court addressed an identical after-acquired vehicle clause and determined that no new stacking waivers were needed when a vehicle was added to the policy. *Kuhns v. Travelers Home and Marine Ins. Co.*, 283 F. Supp. 3d 268 (M.D. Pa. 2017). However, in *Kuhns* it was undisputed that the vehicle was added pursuant to the after-acquired vehicle clause. *Kuhns*, 283 F. Supp. 38 at 271-72.

Defendant discusses the after-acquired vehicle clause as it was applied in *Pergolese v. Standard Fire Ins. Co.*, 162 A.3d 481 (Pa. Super. Ct. 2017). (Doc. 75, at 13-14). Defendant submits that "[i]t was not the issuance of an amended declarations page that controlled the court's decision in *Pergolese*; rather the court's holding hinged on its determination that the insured had notified their insurance agent of the new vehicle and requested proof of coverage before the vehicle was actually purchased." (Doc. 75, at 13) (emphasis in original) (citing *Pergolese*, 162 A.3d at 490). A look at *Pergolese,* which was used by the court in *Kline* for support, indicates that it *was* the issuance of the amended declarations page that controlled the court's decision. The court began the relevant discussion with the statement, "As in *Bumbarger*, the policy in the instant case includes a newly-acquired-vehicle clause *which does not apply to any vehicles shown in the Declarations*." *Pergolese*, 162 A.3d at 490 (emphasis added). The court then summarized the vehicle-acquisition process: "appellees notified their agent of

---

[6] As an initial matter, all cases which cite the Pennsylvania Insurance Commissioner's statement that vehicles are generally added to policies through newly-acquired vehicle clauses were issued prior to *Kline* and do not address the question of whether the vehicles at issue were covered by the general terms of the policy rather than the after-acquired vehicle clause. *See, e.g., State Auto Property & Cas. Ins. Co. v. Pro Design, P.C.*, 566 F.3d 86, 88 n.3 (3d Cir. 2009).

the new vehicle… and requested proof of coverage before the purchase was completed. The agent then faxed a copy of the insurance card and issued amended declarations pages reflecting coverage of the new vehicle at an increased premium." *Pergolese*, 162 A.3d at 490. Two paragraphs later, the court again mentioned the issuance of amended declarations pages. *Pergolese*, 162 A.3d at 490 ("Here, by contrast, the [vehicle] was not a replacement vehicle. Rather, it was added to the policy 44 days after appellees removed the 1989 Mazda B-2200 from their policy. At that time, the amended declarations pages listed only three vehicles and a decreased premium. Forty-four days later, appellees notified their insurance agent of their intention to purchase the [vehicle] and amended declarations pages were issued."). The discussion of when the insurance agent was notified of the purchase was minimal and the court's holding did not "hinge" on notification of the new vehicle and request for proof of coverage taking place prior to purchase. *See Pergolese*, 162 A.3d at 490. The court placed greater emphasis on the issuance of amended declarations pages.[7] *See Pergolese*, 162 A.3d at 490. Since the additional vehicle was included in the declarations pages, the after-acquired vehicle clause did not apply and new stacking waivers were required. *Pergolese*, 162, A.3d at 490.

Defendant urges the Court to follow *Toner v. The Travelers Home and Marine Ins. Co.,* 137 A.3d 583 (Pa. Super. Ct. 2016), in which amended declarations pages were issued but the after-acquired vehicle clause still applied. (Doc. 75, at 14-15). In *Toner*, however, the trial

---

[7] In the case at bar, the amended declarations page shows a change involving the additional vehicle effective January 8, 2009, and the undisputed evidence is that Defendant was notified of the additional vehicle prior to it being driven. (Doc. 65-6, at 2; Doc. 68-4, at 4).

court had determined that the after-acquired vehicle clause was at issue, a determination that occurred prior to the Superior Court's holding in *Kline* that notification upon acquisition, amended declarations sheets in conjunction with notification, and corresponding increased premiums result in an addition to the policy through endorsement rather than the after-acquired vehicle clause. *Toner,* 137 A.3d at 592; *see Kline,* 223 A.3d at 687-88. In fact, the court in *Toner* effectively countered the argument that the after-acquired vehicle clause should take effect under the instant circumstances when it described the purpose of the after-acquired vehicle clause:

> Initially, an after-acquired-vehicle clause is essentially a contractual grace period, during which the insurer will automatically provide coverage for a newly acquired vehicle for a brief period, until either other insurance is purchased *or the insurer is informed of the new vehicle and the insured asks to have the new vehicle put on the existing policy*. This clause gives an insured the time to decide what insurance to ultimately purchase.

*Toner*, 137 A.3d at 588 (emphasis added).

It follows that when the insured informs the insurer of the new vehicle and asks to have the vehicle put on the existing policy, as Plaintiff did here, the after-acquired-vehicle clause ceases to apply. *See Toner*, 137 A.3d at 588.[8]

Finally, Defendant takes issue with *Kline* on grounds that the court did not discuss the *Sackett* trilogy, nor whether the after-acquired vehicle clause was continuous or finite. (Doc. 75, at 13). However, as discussed *supra*, the court in *Kline* determined that the after-acquired vehicle clause was not applicable because the circumstances of the vehicles' acquisitions resulted in them being added to the policy through endorsement. *Kline*, 223 A.3d at 687-88.

---

[8] Defendant also cites to *Shipp v. The Phoenix Ins. Co.*, 51 A.3d 219 (Pa. Super. 2012); however, *Shipp* does not address adding vehicles to a policy. *See Shipp*, 51 A.3d at 222-24.

There was no reason for the court to discuss the nature of the after-acquired vehicle clause, nor *Sackett,* which addressed the construction of the after-acquired vehicle clause, when it had determined that the after-acquired vehicle clause did not apply. *See Kline*, 223 A.3d at 687-88.

For the foregoing reasons, the after-acquired vehicle clause (J.2) was not triggered when Defendant was notified of the additional vehicle, the additional vehicle was acquired, and an amended declaration page was issued in January 2009. Rather, the additional vehicle was covered by J.1 ("Your covered auto" means "any vehicle shown in the Declarations"). The addition of the vehicle to the Policy, accompanied with an increase in premiums, meant that Defendant was obligated to acquire a new executed waiver of stacked UM/UIM limits. *See Kline*, 223 A.3d at 688.

C. The Policy's HVE

Defendant submits that the HVE in Plaintiff's policy should operate to preclude UIM benefits. (Doc. 66, at 19-30). According to Defendant, *Gallagher v. Geico Indemnity Company*, 201 A.3d 132 (Pa. 2019) should not apply because the circumstances of this matter differ from those in *Gallagher*. (Doc. 66, at 23-30). Defendant asserts that *Gallagher* only restricts enforcement of the HVE when (1) multiple insurance policies are issued by the same insurer, (2) the insurer unilaterally requires issuance of both policies, (3) the named insured does not sign a statutorily compliant stacking waiver prior to the date of the accident, (4) the named insured selects and pays for stacking under both policies, and (5) the insurer charges the insured a higher premium on both policies in exchange for providing stacked UIM coverage. (Doc. 66, at 24).

In response, Plaintiff states that this Court has already held that "the HVE will have no bearing on the resolution of this case." (Doc. 73, at 11). Since this issue was earlier resolved, it is now the law of the case, according to Plaintiff. (Doc. 73, at 11). Such rules of law "should continue to govern the same issues in subsequent stages in the same case." (Doc. 73, at 12) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983).

The Court's Memorandum and Order of December 1, 2020, is the law of the case and precludes enforcement of the HVE in the case at bar. The holding of the Court in that prior decision make clear that in absence of a valid stacking waiver, an HVE cannot serve to prevent stacked UIM coverage: "[T]he Pennsylvania Supreme Court held that an HVE cannot be used as a *de facto* waiver of stacked UIM coverage when the insured does not formally waive stacking through the statutorily-prescribed UIM coverage waiver." (Doc. 49, at 11) (citing *Gallagher*, 201 A.3d at 138). As a matter of law, "when a UM/UIM stacking waiver has not been signed, an HVE cannot be utilized by the insurer to avoid stacking."[9] (Doc. 49, at 11). Though this decision does not determine the applicability of an HVE in circumstances where the insured signs a valid stacking waiver, no valid stacking waiver was in effect at the time of the accident. (Doc. 49, at 11).

---

[9] As discussed by the Court in its December 1, 2020, memorandum and order, cases in which UIM insurance was not purchased for the vehicle involved in the accident do not apply to this matter. *See, e.g., Erie Ins. Exchange v. Sutherland*, No. 1113 WDA 2020, 2021 WL 2827321 (Pa. Super. Ct. July 7, 2021); *Dunleavy v. Mid-century Ins. Co.*, No. 2:19-CV-1304, 2020 WL 2536816 (W.D. Pa. May 19, 2020).

The Court made clear that the HVE cannot be used to avoid stacking in the absence of an effective stacking waiver.[10] (Doc. 49, at 10-16). "If Decedent did not sign a Stacking Waiver as prescribed by the MVFRL, then his UIM benefits provided by Defendant shall be stacked and applicable regardless of the presence of an HVE." (Doc. 49, at 16). As such, Defendant's Motion for Summary Judgment on grounds that the HVE should be enforced shall be **DENIED**. (Doc. 65).

V.      CONCLUSION

For the reasons set forth in this Memorandum Opinion, Plaintiff's Motion for Summary Judgment is **GRANTED.** (Doc. 68). Plaintiff is entitled to pursue both inter- and intra-policy stacked UIM benefits under the Policy. Additionally, Defendant's Motion for Summary Judgment is **DENIED** (Doc. 65) and Plaintiff's Motion for Partial Summary Judgment is **GRANTED**. (Doc. 51).

An appropriate Order shall follow.

Dated: August 30, 2021                    s/ Karoline Mehalchick
                                          **KAROLINE MEHALCHICK**
                                          **United States Magistrate Judge**

---

[10] This holding was confirmed by the court in *Donovan*, which stated that because it does not provide the insured with a knowing waiver of stacked coverage, the household vehicle exclusion cannot serve to waive stacking. *See Donovan*, 2021 WL 3628706, at *10-13.